2010 ME 3

**STATE of Maine**

v.

**Mark ELLIOTT.**

Supreme Judicial Court of Maine.

Argued: Sept. 17, 2009.
Decided: Jan. 21, 2010.

Darrick X. Banda, Esq. (orally), Daniel G. Lilley Law Offices, P.A., Portland, ME, for Mark Elliott.

Stephanie Anderson, District Attorney, Anne Berlind, Asst. Dist. Atty. (orally), Portland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] Mark Elliott appeals from judgments of conviction of stalking (Class D), 17–A M.R.S. § 210–A(1)(A)(1) (2007) (amended 2008),[1] and violating a protective order (Class D), 19–A M.R.S. § 4011(1) (2009),[2] entered in the Superior Court (Cumberland County, *Warren, J.*) after a jury trial. Elliott makes a number of arguments,[3] but we address only the following: (1) whether evidence of his use of the roads was inadmissible because the stalking statute's definition of a "course of conduct" excludes the exercise of the constitutional right to travel; (2) whether the court erred in instructing the jury regarding unanimity on each event constituting a course of conduct; and (3) whether the court should have dismissed the count for violating a protective order or given an explanatory jury instruction because the State alleged "following," "monitoring," and "stalking," which are not elements of that crime, *see* 19–A M.R.S. §§ 4007(1), 4011(2) (2009).[4] We affirm Elliott's convictions.

## I. BACKGROUND

[¶ 2] Viewing the facts in the light most favorable to the State, the jury could

1. The following statutory language was in effect at the time of the alleged incidents:

   1. A person is guilty of stalking if:
      A. The actor intentionally or knowingly engages in a course of conduct directed at a specific person that would in fact cause both a reasonable person and that other specific person:
         (1) To suffer intimidation or serious inconvenience, annoyance or alarm.
   17–A M.R.S. § 210–A (2007), *amended by* P.L.2007, ch. 685, § 1 (effective July 18, 2008) (codified at 17–A M.R.S. § 210–A(1)(A)(1) (2009)); P.L.2009, ch. 336, 311 (effective Sept. 12, 2009) (codified at 17–A M.R.S. § 210–A(1)(C) (2009)).

2. Section 4011 provides, in relevant part:

   1. Crime committed. Except as provided in subsections 2 and 4, violation of the following is a Class D crime when the defendant has prior actual notice, which may be notice by means other than service in hand, of the order or agreement:
      A. A temporary, emergency, interim or final protective order, an order of a tribal court of the Passamaquoddy Tribe or the Penobscot Nation or a similar order issued by a court of the United States or of another state, territory, commonwealth or tribe; or
      B. A court-approved consent agreement.

   2. **Exception.** When the only provision that is violated concerns relief authorized under section 4007, subsection 1, paragraphs H to N, the violation must be treated as contempt and punished in accordance with law.
   19–A M.R.S. § 4011(2009).

3. Elliott argues, for instance, that the convictions for stalking and violating a protective order violate the Double Jeopardy Clauses of the United States and Maine Constitutions. We conclude that there was no such constitutional violation because the Legislature contemplated and intended that multiple punishments might be imposed for stalking and for violating a protective order, and the two charges against Elliott were tried simultaneously. *See State v. Labbe*, 2009 ME 94, 979 A.2d 693.

4. Relevant to the issues in the present appeal, 19–A M.R.S. § 4007(1) (2009) provides:

   **Protection order; consent agreement.** The court, after a hearing and upon finding that the defendant has committed the alleged abuse or engaged in the alleged conduct described in section 4005, subsection 1, may grant a protective order or, upon making that finding, approve a consent agreement to bring about a cessation of abuse or the alleged conduct. This subsection does not preclude the parties from voluntarily

rationally have found the following facts beyond a reasonable doubt. *See State v. Bruzzese*, 2009 ME 61, ¶ 2, 974 A.2d 311, 311–12. For two years, Mark Elliott and Jane Doe [5] were involved in a romantic and sexual relationship. Doe broke up with Elliott in the fall of 2004, but they agreed at that time to remain friends. In June 2005, they had a disagreement, and in the fall of 2005, Doe told Elliott that she did not want any more contact with him.

[¶ 3] Doe worked in Andover, Massachusetts, three days per week, and she worked from home in South Portland on the other two days. Elliott was aware of Doe's work schedule and commuting habits from telephone conversations the two had while they were dating.

[¶ 4] Within two or three months after Doe told Elliott she did not want to have any more contact with him, Doe began to see him parked outside of a convenience store in South Portland near her home during her morning commute. At least ten times, she saw him sitting in his truck, parked parallel to the road, with the engine running. She also saw him in the parking lot of her workplace in Andover, Massachusetts. She had never seen him during her commute while they were dating, and he had never visited her at work. Based on these events, Doe sought and obtained a protection from abuse order in March 2006. Elliott was present at the

hearing and was served a copy of the order in hand at the courthouse.

[¶ 5] About a month after she obtained the protective order, Doe saw Elliott at the convenience store again. She began to keep track of when she saw him, and she made reports to the police. Doe and her husband witnessed Elliott either parked or driving in his truck along Doe's work route eleven times between May 17, 2006, and March 13, 2008. The final incident on March 13 involved Elliott accelerating rapidly in his truck behind Doe on the Maine Turnpike, passing her vehicle on the left, and then slowing down. Doe slowed to maintain a distance between her car and Elliott's.

[¶ 6] Doe then sought to extend the protective order she had obtained. After notice and the opportunity for a hearing, and with both parties present in the courtroom and agreeing to the order, the court issued an extended protective order. The court entered a written judgment in which it ordered Elliott not to have any contact with Doe and added, "this includes following, stalking, monitoring plaintiff along her work route from So. Portland to Andover, MA."

[¶ 7] After obtaining the extended order, Doe again saw Elliott parked along her work route during her morning com-

requesting a consent agreement without a finding of abuse. The court may enter a finding that the defendant represents a credible threat to the physical safety of the plaintiff or a minor child residing in the plaintiff's household. Relief granted under this section may include:
. . . .
C. Directing the defendant to refrain from repeatedly and without reasonable cause:
  (1) Following the plaintiff;
  (2) Being at or in the vicinity of the plaintiff's home, school, business or place of employment; or

  (3) Engaging in conduct defined as stalking in Title 17–A, section 210–A;
D. Directing the defendant to refrain from having any direct or indirect contact with the plaintiff;
. . . .
M. Entering any other orders determined necessary or appropriate in the discretion of the court.

5. It is our practice not to use the names of alleged victims in our opinions. For ease of reading, we have used Jane Doe as a pseudonym.

mute. She saw him three times between April 30, 2008, and June 12, 2008.

[¶ 8] On June 18, 2008, Elliott was charged with domestic violence stalking (Class D), 17–A M.R.S. § 210–C(1)(A) (2009), during the period from September 22, 2007, through June 12, 2008,[6] and violation of a protection from abuse order (Class D), 19–A M.R.S. § 4011(1)(A). The complaint alleged that Elliott had violated the protection from abuse order "by following, stalking, and/or monitoring [Doe] along her work route from South Portland to Andover, MA."

[¶ 9] Elliott pleaded not guilty and moved to dismiss the second count on the ground that he could only be held in civil contempt for violating a provision of the protection order entered pursuant to 19–A M.R.S. § 4007(1)(M) (2009), which permits the court to enter "any other orders determined necessary or appropriate." *See* 19–A M.R.S. § 4011(2) ("When the only provision that is violated concerns relief authorized under section 4007, subsection 1, paragraphs H to N, the violation must be treated as contempt and punished in accordance with law."). The court (*Brodrick, J.*) denied Elliott's motion to dismiss based on its conclusion that the court that entered the extended protective order had acted within its authority in clarifying

what the term "contact" meant in that order.[7]

[¶ 10] The court (*Warren, J.*) held a jury trial on both charges.[8] After the State presented evidence and testimony from Doe and her husband, Elliott unsuccessfully moved for a judgment of acquittal. The parties then stipulated that, as of March 19, 2008, Elliott had actual notice of the extended protection from abuse order of March 14, 2008. Elliott did not offer any additional evidence.

[¶ 11] Regarding jury instructions for the stalking charge, Elliott proposed the inclusion of the entire definition of "course of conduct" contained in the stalking statute in effect at the time of the alleged conduct. *See* 17–A M.R.S. § 210–A(2)(A) (2007), *amended by* P.L.2007, ch. 685, § 1 (effective July 18, 2008). The definition included the following language: " 'Course of conduct' does not include activity protected by the Constitution of Maine, the United States Constitution or by state or federal statute." *Id.* Elliott also proposed that the language regarding "following, stalking, and/or monitoring" be stricken from the instruction on the charge for violating a protective order because these are not criminal elements and are punishable only by contempt. *See* 19–A M.R.S. §§ 4007(1)(M), 4011(2).

---

**6.** Section 210–C took effect on February 1, 2008, *see* P.L.2007, ch. 436, §§ 4, 7 (effective February 1, 2008), which is presumably why Elliott was convicted of stalking pursuant to 17–A M.R.S. § 210–A (2007), rather than domestic violence stalking pursuant to 17–A M.R.S. § 210–C (2009).

**7.** The court also observed that a protection from abuse order could prohibit stalking pursuant to 19–A M.R.S. § 4007(1)(C)(3). That paragraph authorizes a court to enter a protective order prohibiting a defendant from *"repeatedly and without reasonable cause ...* [e]ngaging in conduct defined as stalking in

Title 17–A, section 210–A." *Id.* Because the complaint did not allege that Elliott stalked Doe "repeatedly and without reasonable cause," we consider Elliott to have been charged with violating a no-contact provision entered pursuant to 19–A M.R.S. § 4007(1)(D) rather than a provision entered pursuant to section 4007(1)(C)(3).

**8.** Although the State moved before trial to amend the complaint to allege an expanded date range for the stalking charge, the court denied this motion and the trial proceeded based on the original allegations.

[¶ 12] The court denied Elliott's requests and instructed the jury as follows on the stalking charge:

[T]o convict Mark Elliott of stalking, the State must prove the following beyond a reasonable doubt.

First, that Mark Elliott engaged in a course of conduct directed at [Doe] that consisted of repeatedly maintaining a visual or physical proximity to [Doe], or repeatedly conveying oral or written threats, threats implied by conduct, or a combination of threats and conduct directed at or toward [Doe]. And, repeatedly means on two or more occasions.

Second, the State has to prove that this course of conduct, in fact, caused [Doe] to suffer intimidation or serious inconvenience, annoyance or alarm. Third, ... that this course of conduct would also cause a reasonable person to suffer intimidation or serious inconvenience, annoyance or alarm. And, finally, that in engaging in this course of conduct, Mark Elliott acted either intentionally or knowingly.

On the count for violation of a protective order, the court instructed:

The second charge against Mark Elliott is that he violated a March 14, 2008 protection from abuse order on one or more occasions during the period beginning on April 30, 2008 and ending on June 12, 2008. And to convict Mark Elliott on this charge, the State must prove all of the following beyond a reasonable doubt.

First, that a protection from abuse order was issued. Second, that Mark Elliott had actual notice of that protection order. And, third, that after receiving actual notice of that order, Mark Elliott violated a provision of that order.

And the specific provision of the order that the State alleges was violated is a provision prohibiting Mark Elliott from following, stalking or monitoring [Doe] along her work route from South Portland to Andover, Massachusetts. In this context, monitor should be interpreted according to its ordinary meaning, to track or keep watch on.

The court also provided a general instruction on unanimity directing that, "to return a verdict of either guilty or not guilty, the verdict must be unanimous. Each member of the jury must agree to it."

[¶ 13] The jury returned guilty verdicts on both charges. After the verdicts, Elliott renewed his motion for a judgment of acquittal, moved for a new trial, and moved to arrest judgment. The court denied these motions.

[¶ 14] The court entered judgments of conviction of stalking, 17–A M.R.S. § 210–A(1)(A)(1), and violation of a protective order, 19–A M.R.S. § 4011(1). The court sentenced Elliott to eleven months incarceration, all but five months suspended, with a year of probation on the stalking conviction, and imposed a consecutive six-month sentence, all suspended, with a year of probation for violation of the protective order.[9]

[¶ 15] Elliott moved for reconsideration of his motion for judgment of acquittal and for the court to correct the sentence. The court denied his motion, and this appeal followed.

## II. DISCUSSION

[¶ 16] For the reasons set forth below, we determine that the court committed no error in its rulings or jury instructions related to either charge and that the crimi-

---

9. The court also ordered Elliott to pay a total of $20 to the Victims' Compensation Fund.

nal complaint charging Elliott with violating a protective order was not defective.

## A. The Stalking Charge

### 1. Constitutional Right to Travel

■ [¶ 17] Elliott first argues that any evidence of his presence on public ways or in parking areas should not have been admitted because the applicable version of the stalking statute explicitly excluded from the definition of "course of conduct" any "activity protected by the Constitution of Maine, the United States Constitution or by state or federal statute." 17–A M.R.S. § 210–A(2)(A). We review de novo interpretations of the United States and Maine Constitutions. *See In re Robert S.,* 2009 ME 18, ¶ 12, 966 A.2d 894, 897.

■ [¶ 18] Elliott's claim that he had a constitutional right to be on public roads, even when he was consistently in the places where he knew Doe would be, is unavailing. "The constitutional protection of a right to travel from state to state is not contravened when a State enacts and enforces reasonable regulations to promote public safety." *State v. Quinnam,* 367 A.2d 1032, 1034 (Me., 1977). For instance, the right to travel is not violated by statutes that require protective headgear when riding a motorcycle, *id.,* or regulate the recreational use of a river for rafting, *Brown v. Dep't of Inland Fisheries & Wildlife,* 577 A.2d 1184, 1185–86 (Me.1990), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991). As long as a statute constraining such activity bears a rational relationship to the state's legitimate governmental purpose, the govern-

ment action is not unconstitutional. *Id* at 1185–86.[10]

[¶ 19] A prohibition against stalking another person is a reasonable regulation of travel that is rationally related to promoting public safety. *See Quinnam,* 367 A.2d at 1034. Other courts that have directly addressed this issue have reached the same conclusion. *See Snowden v. State,* 677 A.2d 33, 37–38 (Del.1996); *State v. Holbach,* 763 N.W.2d 761, 765–66 (N.D.), *cert. denied,* —— U.S. ——, 130 S.Ct. 232, 175 L.Ed.2d 160 (2009); *see also People v. Bailey,* 167 Ill.2d 210, 212 Ill.Dec. 608, 657 N.E.2d 953, 962 (1995) (holding that a stalking statute did not implicate any constitutionally protected activity), *overruled in part on other grounds by People v. Sharpe,* 216 Ill.2d 481, 298 Ill.Dec. 169, 839 N.E.2d 492 (2005).

[¶ 20] Simply put, stalking another person is not constitutionally protected behavior. Because the State has a legitimate interest in protecting public safety by prohibiting defined types of behavior that infringe on the rights of another person, Elliott's prohibited conduct toward Doe was not constitutionally protected. *See Holbach,* 763 N.W.2d at 766 ("[V]iolence or other activities that harm another person are not constitutionally protected.") (citing *Roberts v. U.S. Jaycees,* 468 U.S. 609, 628, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). The court did not err in admitting evidence of Elliott's conduct in his vehicle because conduct that satisfies the elements of the stalking statute is not constitutionally protected, and the jury was properly charged with determining whether the evidence was sufficient to establish that Elliott had engaged in stalking. *See* 17–A M.R.S. § 210–A.

---

10. Heightened scrutiny is only applied when the government interferes with the fundamental right to travel from state to state, or in some cases internationally, to settle or abide.

*See Brown v. Dep't of Inland Fisheries & Wildlife,* 577 A.2d 1184, 1185 & n. 4 (Me.1990), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991).

### 2. Unanimity Instruction

■ [¶ 21] Elliott next contends that the court violated his due process rights by failing to instruct the jury that unanimity is required for each of the events that make up a course of conduct on the stalking charge. He argues that the jury may have impermissibly premised its verdict on an insufficient consensus about which events took place.

[¶ 22] Because Elliott failed to object to the jury instructions on this basis, we review for obvious error to determine whether the instructions given were incorrect and whether they resulted in a seriously prejudicial error tending to produce a manifest injustice. *State v. Perry*, 2006 ME 76, ¶¶ 14, 15, 899 A.2d 806, 813.

■ [¶ 23] The Maine Constitution provides that "unanimity, in indictments and convictions, shall be held indispensable." Me. Const. art. I, § 7. The requirement of unanimity does not, however, require the jurors to agree unanimously on individual facts when determining whether the State has satisfied a single element of a crime. For example, a jury may convict a defendant of the crime of murder even if jurors disagree about whether the defendant engaged in conduct manifesting a depraved indifference to the value of human life, or acted knowingly or intentionally, in causing the death of another. *State v. Erskine*, 2006 ME 5, ¶ 19, 889 A.2d 312, 318. This is true because, "[i]n Maine, murder is a single offense, even though there

are alternative theories for its commission." *Id.* ¶ 14, 889 A.2d at 317.

[¶ 24] Similarly, "the crime of unlawful sexual contact is only one crime regardless of whether the sexual contact occurs for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact." *State v. St. Pierre*, 1997 ME 107, ¶ 7, 693 A.2d 1137, 1139. Unanimity regarding the purpose is not required in these circumstances. *Id.*

[¶ 25] The same is true regarding crimes tried in federal courts. A conviction for a federal crime upon a jury trial requires that the jury "unanimously find [ ] that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). Although the jury's decision on each element must be unanimous, however, the jury "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.*[11]

[¶ 26] In considering stalking statutes, other jurisdictions have held that juries need not receive unanimity instructions regarding the specific acts that make up a course of conduct. *See, e.g., People v. Ibarra*, 156 Cal.App.4th 1174, 67 Cal. Rptr.3d 871, 891 (2007) (holding that a unanimity instruction was not required regarding the specific acts that constituted

---

**11.** When a federal statute required the government to prove that a drug crime was part of a " 'continuing series of violations,' " to demonstrate that the defendant was engaged in a continuing criminal enterprise, *Richardson v. United States*, 526 U.S. 813, 815, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (quoting 21 U.S.C.S. § 848(c)(2) (2002)), however, the United States Supreme Court required jury unanimity as to each individual "violation," *id.* at 824, 119 S.Ct. 1707. As the Court

stated, "To hold that each 'violation' here amounts to a separate element is consistent with a tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law." *Id.* at 818–19, 119 S.Ct. 1707. This reasoning is distinguished from a situation in which the jurors disagree about the mere means by which an element is satisfied. *See Schad v. Arizona*, 501 U.S. 624, 632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

stalking because the crime required proof of a course of conduct, not particular individual acts); *People v. Carey,* 198 P.3d 1223, 1236 (Colo.Ct.App.2008) (same); *Washington v. United States,* 760 A.2d 187, 198–99 (D.C.2000) (same); *People v. Rand,* 291 Ill.App.3d 431, 225 Ill.Dec. 580, 683 N.E.2d 1243, 1249 (1997) (same); *see also Cook v. State,* 36 P.3d 710, 720–22 (Alaska Ct.App.2001) (holding same on plain error review); *Commonwealth v. Julien,* 59 Mass.App.Ct. 679, 797 N.E.2d 470, 476 (2003) (rejecting, on obvious error review, the defendant's argument for a unanimity instruction on the separate acts that collectively constitute stalking); *State v. Hoxie,* 963 S.W.2d 737, 742–43 (Tenn. 1998) (holding that the State was not required to elect which incidents it was relying upon to prove a course of conduct).

[¶ 27] Here, a "course of conduct" is a single element. Unanimity among the jurors is not required, therefore, as to each act that makes up that course of conduct. The jury was presented with testimony about a series of incidents from which it could find that the State had satisfied the "course of conduct" element. The court committed no error, much less obvious error, in delivering only a general unanimity instruction at the close of Elliott's trial.

**B. The Charge of Violation of a Protective Order**

[¶ 28] Elliott argues that "following," "monitoring," and "stalking" are not elements of the crime of violating a protection

order because any terms added to the protection order beyond the terms permitted by 19–A M.R.S. § 4007(1)(A) to (G) may be penalized only through civil contempt. *See* 19–A M.R.S. § 4011(2). Accordingly, he contends that the complaint charging him with the crime was fatally defective.[12]

[¶ 29] The sufficiency of a charging instrument is a jurisdictional issue. *See State v. Day,* 2000 ME 192, ¶ 4, 760 A.2d 1039, 1040. The instrument "must allege every element of the offense charged." *Id.* A court may not add elements to a crime because "[n]o conduct constitutes a crime unless it is prohibited ... [b]y this code [the Maine Criminal Code]; or ... [b]y any statute or private act outside this code, including any rule, regulation or ordinance authorized by and lawfully adopted under a statute." 17–A M.R.S. § 3(1) (2009). We construe the statute defining an offense de novo to determine what elements constitute the crime. *Day,* 2000 ME 192, ¶ 5, 760 A.2d at 1040. In doing so, we construe the statute strictly based on its plain meaning, viewed in the context of the entire statutory scheme. *Id.* The purpose is to give effect to the intent of the Legislature, which presumably intended to generate a harmonious result. *Id.*

[¶ 30] For Elliott to be criminally convicted for violating a protective order, the State had to prove the following elements: (1) that a temporary, emergency, interim or final protective order was entered

---

**12.** Elliott also argues that his conduct could not give rise to criminal charges for violating a protective order because another provision of the protection from abuse statute—separate from the no-contact provision—permits a court to enter an order "[d]irecting the defendant to refrain from *repeatedly* and without reasonable cause ... [f]ollowing the plaintiff ... or ... [e]ngaging in conduct defined as stalking in Title 17–A, section 210–A." 19–A

M.R.S. § 4007(1)(C)(1), (3) (emphasis added). We will not read section 4007(1)(C) to preclude the State from charging conduct that, whether or not done "repeatedly and without reasonable cause," constitutes impermissible contact pursuant to section 4007(1)(D). *See State v. Hopkins,* 526 A.2d 945, 950 (Me.1987) (stating that we will not interpret a statute to generate an absurd result).

against Elliott; (2) that Elliott had prior actual notice of the order or agreement; and (3) that Elliott violated the terms of that order. *See* 19–A M.R.S. § 4011(1). Regarding this third element, Elliott could be subjected to criminal charges and sanctions only if the term of the order that he violated was among those listed in paragraphs (A) through (G) of section 4007(1). *See* 19–A M.R.S. § 4011(2). In entering a protective order, a court is free to establish such conditions as are necessary to protect an individual from harm, *see* 19–A M.R.S. § 4007(1)(M), but violations of only those protections set forth in paragraphs (A) through (G) are punishable as crimes, *see* 19–A M.R.S. § 4011(2). .

[¶ 31]  Elliott was charged with violating the provision of the extended protection from abuse order that prohibited him from "having any direct or indirect contact" with Doe. *See* 19–A M.R.S. § 4007(1)(D). With the parties' agreement at the time the extended order was entered, the court that issued this order included clarifying language, in addition to the prohibition against having direct or indirect contact, to ensure that Elliott understood exactly what behavior would be considered to violate the order. In so doing, the court wrote that contact "includes following, stalking, monitoring [Doe] along her work route from So. Portland to Andover, MA."

[¶ 32]  We are asked to decide whether, in its effort to put Elliott on notice of the conduct that was prohibited and subject to criminal punishment, the court described conduct that was outside the proscribed conduct of "having any direct or indirect contact" with the person identified in the protective order. *See* 19–A M.R.S. §§ 4007(1)(D), 4011(2). Thus, the question is whether Elliott could be convicted for violating a protective order entered pursuant to section 4007(1)(D) based on a charge that Elliott "follow[ed]," "monitor[ed]," or "stalk[ed]" Doe along her work route from Portland to Andover.

[¶ 33]  Contact prohibited by paragraph (D) may be established by proof of a variety of actions, such as sending electronic mail, *State v. Turner*, 2001 ME 44, 766 A.2d 1025, or calling the house of a person with whom the protected person had an existing romantic relationship, *State v. Smen*, 2006 ME 40, ¶¶ 2–9, 895 A.2d 319, 320–22. *See also State v. Pettengill*, 635 A.2d 1309, 1309–10 (Me.1994) (holding that the defendant violated a bail condition that prohibited contact by making a gesture from a car window). Because the criminal complaint did not specifically allege "contact," we must consider whether the conduct described—that of following, monitoring, or stalking an identified individual *along that person's route to and from work*—would, if proved, constitute criminally punishable "direct or indirect contact." 19–A M.R.S. § 4007(1)(D); *see* 19–A M.R.S. § 4011(1), (2).

[¶ 34]  Contact is "a condition or an instance of meeting, connecting, or communicating." Webster's Third New International Dictionary of the English Language Unabridged 490 (2002). The term "direct" means "marked by absence of an intervening agency, instrumentality, or influence," or "experienced personally without associative effort of anyone else." *Id.* at 640. By prohibiting direct or indirect contact, therefore, an order entered pursuant to section 4007(1)(D) instructs a defendant not to meet, connect, or communicate with the protected person, either personally or through an intervening agency, instrumentality, influence, or other person. *See id.* at 490, 640.

■ [¶ 35]  We first address whether *following* Doe along her work route would necessarily involve contact. To follow means "to go, proceed, or come after:

move behind over the same course." *Id.* at 883. Going, proceeding, or coming after a person along that person's work route inherently involves a direct or indirect meeting with that person in a defined geographic area and at particular times of day. Thus, the criminal complaint was not defective to the extent that it alleged that Elliott had violated the protective order by following Doe along her work route.

■ [¶ 36] Regarding Elliott's argument that *monitoring* Doe along her work route does not necessarily constitute contact, we look to the ordinary meaning of the term "monitor," which means "to watch, observe, or check esp. for a special purpose." [13] *Id.* at 1460. The term as used here—"monitoring [Doe] along her work route from So. Portland to Andover, MA"—describes conduct that would inherently involve at least indirect contact with Doe because of the identified temporal and geographical limitation. Whether the person subject to the order has a purpose to communicate his or her presence, or to keep track of the movements and doings of the person who obtained the order, monitoring a person along a specified route to and from work results in a meeting between the two parties either directly or indirectly. *See id.* at 490, 640, 1460.[14] Monitoring an individual along a specified

route therefore inherently involves direct or indirect contact with that other person.

■ [¶ 37] Regarding Elliott's final contention that *stalking* Doe along her work route does not necessarily constitute direct or indirect contact, we examine the statutory definition of the crime of stalking. To establish that Elliott engaged in stalking as defined by the statute then in effect, the State was required to prove that: (1) Elliott repeatedly maintained a visual or physical proximity to Doe; (2) Elliott's conduct was not an activity protected by the Maine or United States Constitutions or by state or federal statutes; (3) Elliott's conduct was directed at Doe specifically; (4) Elliott acted intentionally or knowingly; and (5) Elliott's course of conduct would in fact cause both a reasonable person and Doe to suffer intimidation or serious inconvenience, annoyance or alarm. *See* 17–A M.R.S. § 210–A(1)(A)(1), (2)(A). Repeatedly maintaining visual or physical proximity to Doe along her work route constitutes "contact," as that term is commonly understood. *See* Webster's Third New International Dictionary of the English Language Unabridged 490 (defining "contact" to include "a condition or an instance of meeting, connecting, or communicating"). Because stalking a person along a specified route constitutes contact with that person, the court that issued the

---

13. This definition is substantially similar to the definition provided by the trial court: "to track or keep watch on."

14. Although Elliott cites to *State v. Ryan*, 969 So.2d 1268, 1273–74 (La.Ct.App.2007), for the proposition that contact requires communication, the statute involved in that case defined harassing as a pattern of "verbal *communications* or nonverbal behavior," and it provided examples of behavior that were all communicative. *Id.* at 1273 & n. 1. The statute at issue here includes the term "contact," which is broader than the term "communication." Elliott's citation to an Indiana case is also inapposite because the issue decided in

that case was whether contact was "impermissible contact," and the court concluded that, because the defendant had not been notified that being on a public street in certain locations was *impermissible*, he could not be held criminally liable for that activity. *Van-Horn v. State*, 889 N.E.2d 908, 911–14 (Ind. Ct.App.2008). There is no question in the present case that Elliott had notice of the prohibitions contained in the extended protection from abuse order; he had agreed to those prohibitions, and his earlier, similar actions had led to the extension of the initial order of protection.

protective order was authorized to prohibit Elliott from stalking Doe along her work route pursuant to section 4007(1)(D).

[¶ 38] Accordingly, although the State may not, by complaint, alter or add to the elements of a crime, *see* 17-A M.R.S. § 3(1), the State here charged Elliott with conduct that, if proved, would constitute either direct or indirect contact with Doe and satisfy the element of the crime that requires a violation of a provision in a protective order that was authorized by paragraphs (A) through (G) of section 4007(1)—here, paragraph (D). *See* 19-A M.R.S. §§ 4007(1)(D), 4011(1), (2). For these reasons, there was no defect in the complaint or in the resulting jury instructions on the charge for violating a protective order.

[¶ 39] We discern no defect in the charging instrument or in the jury instructions on either charge, and we affirm the judgments of conviction on both counts.

The entry is:

Judgments affirmed.