MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 102
Docket:      Sag-17-508
Argued:      June 13, 2018
Decided:     July 24, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

RICHARD A. HEFFRON III

HJELM, J.

[¶1]  Despite being enjoined by a protection from abuse order from having direct or indirect contact with the person protected by that order, on his Facebook page Richard A. Heffron III published several posts—including threatening ones—directed at the protected person.  Heffron was charged with violating the protection order (Class D), 19-A M.R.S. § 4011(1) (2017), and, after a jury-waived trial held in the Unified Criminal Docket (Sagadahoc County, *Billings, J.*), he was convicted of the crime.  Heffron appeals the conviction, asserting that his Facebook posts did not violate the protection order.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The State charged Heffron with violating the order for protection from abuse by having contact with the protected person—conduct that was prohibited by the order.[1]  The complaint was filed in September of 2017, and Heffron pleaded not guilty.  After holding a trial in November of 2017, the court made the following findings, which are supported by evidence in the record.[2] *See State v. Proia*, 2017 ME 169, ¶ 2, 168 A.3d 798.

[¶3]  The order for protection from abuse, of which Heffron had actual notice, prohibited him from having direct or indirect contact with the protected person except in circumstances that are not present here.[3]  In September of 2017, Heffron published several posts concerning the protected person on

---

[1]  As is evident from our description of the evidence, *see infra* ¶ 3, the record could well have supported a charge that Heffron violated the provision of the protection order prohibiting him from threatening and harassing the protected person, but because of an admitted oversight, the State did not charge him with that type of violation.

[2]  In accordance with the requirements of the Violence Against Women Act, 18 U.S.C.S. § 2265(d)(3) (LEXIS through Pub. L. No. 115-196), we do not describe those facts that are likely to reveal the identity or location of the protected person.  *See Doe v. Tierney*, 2018 ME 101, ¶ 1 n.1, --- A.3d ---.

[3]  The evidence presented at trial included a copy of the protection order, which reveals that it was issued after a full hearing (West Bath, *Field, J.*) held in June of 2016, that the order was predicated on a finding that Heffron had abused and "presents a credible threat to the physical safety of" the protected person, that the order was to remain in effect until June of 2018, and that the order prohibited Heffron from having direct or indirect contact with the protected person except in narrowly drawn circumstances that are not relevant to this case.

Facebook,[4] a social media platform that Heffron and the protected person each used when they were in a relationship and on which they had once been "friends" and now have "friends" in common.[5] The content of some of the posts was personal, and the language Heffron used was—as described by the court— "obviously offensive." Heffron began some of the posts with the phrase, "Hey, [protected person's name]," and the posts then directly addressed the protected person by using the second-person "you." For example, in one of the posts that Heffron authored, he stated, "IM GONNA RUN YOU DOWN EVERY CHANCE I CAN TODAY AND TOMORROW AND THE NEXT DAY AND THE NEXT."

[¶4] The court found that "these are not posts that were simply expressing protected opinions about [the protected person] or providing information about [the protected person], these posts were intended to reach [the protected person] directly and by their plain language that was their intent[.] . . . [T]hey are addressing [the protected person] directly . . . ." The court went on to find that Heffron intended for the Facebook posts to reach the

---

[4] At trial, Heffron argued that the evidence was insufficient for the court to find that he had authored at least some of the posts at issue. The court nonetheless found that Heffron had written all of the posts attributed to him, and Heffron does not challenge that factual determination on appeal.

[5] Facebook, an internet-based social media platform, is "becoming the dominant mode of communicating directly with others, exceeding e-mail usage in 2009." *State v. Craig*, 112 A.3d 559, 564 (N.H. 2015). Facebook users can create their own Facebook profile pages and have the option of customizing their privacy settings so that "anyone including people off of Facebook" can view the contents of their profile page. *Id.* (quotation marks omitted).

4

protected person and that this occurred.[6] The court characterized Heffron's use of the social media platform as a way for him to "communicate with [the] protected person through [Facebook as] an intervening agency or instrumentality." Based on these findings, the court found Heffron guilty of violating the protection order and sentenced him to a 90-day jail term with all but 21 days suspended and one year of probation that included conditions requiring him to comply with any protection orders in effect and to not issue posts on social media about or directed to the protected person. Heffron appealed the conviction. M.R. App. P. 2B(b).

## II. DISCUSSION

[¶5] As authorized by 19-A M.R.S. § 4007(1)(D) (2017), the protection order issued against Heffron prohibited him "from having any contact, direct or indirect," with the protected person except in specifically described circumstances that are not present here. "Violation of a protection from abuse order is committed when the defendant violates a temporary, emergency, interim or final protective order if the defendant has prior actual notice of the existence of the order." *State v. Smen*, 2006 ME 40, ¶ 8, 895 A.2d 319 (alteration

---

[6] Evidence presented at the trial indicated that the protected person saw the posts after a member of Heffron's family forwarded screenshots of them to the protected person. The investigating officer testified that once he received a report of the posts, he was able to find them easily on Heffron's public Facebook page.

omitted) (quotation marks omitted); *see* 19-A M.R.S. § 4011(1)(A). A violation of a no-contact provision of a protection order is a Class D crime. 19-A M.R.S. § 4011(1). Heffron asserts that the entries he posted on Facebook do not constitute "direct or indirect contact" with the protected person, that he did not have sufficient notice that the posts were a form of proscribed conduct, and that the posts were a protected form of speech.

[¶6] Although "contact" is not defined in the protection statutes, *see* 19-A M.R.S. §§ 4001-4014 (2017), we have explained that "[b]y prohibiting direct or indirect contact, . . . an order entered pursuant to section 4007(1)(D) instructs a defendant not to meet, connect, or communicate with the protected person, either personally or through an intervening agency, instrumentality, influence, or other person." *State v. Elliott*, 2010 ME 3, ¶ 34, 987 A.2d 513; *see also State v. Pettengill*, 635 A.2d 1309, 1310 (Me. 1994) (stating that, in a bail order prohibiting a defendant from having "contact" with another person, the "word 'contact' is not a word of art, but one of common usage and commonly understood"). The "[c]ontact prohibited by paragraph (D) may be established by proof of a variety of actions," including emailing, gesturing from the window of a car, calling the house of the protected person's current romantic partner,

6

and "monitoring a person along a specified route to and from work . . . ." *Elliott*, 2010 ME 3, ¶¶ 33, 36, 987 A.2d 513.

[¶7]  Given the breadth of the definition of "contact" that a protection order can bar, the court did not err by finding that Heffron had direct or indirect contact with the protected person.  The finding is supported first by the content of some of the posts, in which Heffron directly addressed the protected person by using the phrase, "Hey [protected person's name]" followed by personal and demeaning allegations about the protected person.  The posts also referred to the protected person in the second person—in other words, as "you."  Just as if Heffron were speaking directly to the protected person, he framed his posts as direct communications to that person.  Therefore, the court did not err by finding that the language of the Facebook posts itself demonstrated that Heffron intended to communicate with the protected person.[7]

[¶8]  The court's finding of contact is also supported by the means of communication that Heffron chose.  As the court found, when Heffron published the posts to his publicly accessible Facebook page, he knew that the protected

---

[7]  Because the court found that Heffron's actions were intentional, we do not need to reach his challenge concerning the mens rea required to establish a violation of the protection order or address the question of whether a lesser culpable state of mind would suffice to prove the commission of the crime. *See* 17-A M.R.S. § 34(3) (2017) (explaining that if a court finds a defendant acted intentionally, then that finding is sufficient to establish that the defendant acted knowingly, recklessly, and negligently).

person and that person's family and friends used Facebook. Indeed, the protected person learned of Heffron's Facebook posts when a relative of Heffron, who also knew the protected person, showed screenshots of the posts to the protected person. Therefore, Heffron used Facebook as an intervening agency or instrumentality for the purpose of making contact with the protected person. *See Elliott*, 2010 ME 3, ¶ 34, 987 A.2d 513.

[¶9] In short, the court's finding that Heffron had indirect contact with the protected person was supported by the evidence, *see Smen*, 2006 ME 40, ¶ 7, 895 A.2d 319 (stating that "[i]n reviewing a challenge to the sufficiency of the evidence in a criminal matter, we consider the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged" (quotation marks omitted)), and the court's legal analysis was fully consistent with the broad notion of "contact" explained in *Elliott*.

[¶10] The court's findings also dispose of Heffron's assertion that he did not have adequate notice that his Facebook posts were a prohibited form of contact with the protected person. Through his posts, Heffron *intended* to have contact with that person. Therefore, as found by the court, Heffron's contact with the protected person was not inadvertent or achieved through a means

that was not reasonably seen to serve as an effective means of communication. Because his posts foreseeably reached the protected person, Heffron achieved his goal, and he cannot now successfully complain that he did not know that his conduct was proscribed. Wherever the boundary may lie between conduct that falls within and without the protection order's prohibition against contact, Heffron's Facebook posts do not approach that line.

[¶11] Finally, Heffron may be seen to argue that his Facebook posts were protected speech. We review this First Amendment challenge de novo. *See City of Bangor v. Diva's, Inc.*, 2003 ME 51, ¶ 10, 830 A.2d 898. Our review of Heffron's Facebook posts, which we do not describe in detail for the reason explained above, *see supra* n.2, confirms that some of their contents are highly personal, derogatory, harassing, and threatening. As we have explained, courts do not violate a defendant's First Amendment protections by issuing a protection from abuse order that prohibits him or her from having any direct or indirect contact with the protected person where the defendant has a history of engaging in behavior that "would cause a reasonable person to fear bodily injury and suffer emotional distress . . . ." *Childs v. Ballou*, 2016 ME 142, ¶ 26, 148 A.3d 291. Simply put, "[t]he First Amendment does not serve as a shield to protect [Heffron] from the consequences of his harassing communications." *Id.* ¶ 24.

[¶12]  Here, based on a judicial determination that Heffron had abused and posed a credible physical threat to the protected person, a protection order—which Heffron did not challenge—was issued against him and barred him from having direct or indirect contact with the protected person in nearly all circumstances, including those presented here.  That order was a constitutionally sound injunction against the very conduct in which Heffron later chose to engage, resulting in this prosecution. *See id.* ¶¶ 20, 26.  Based on the evidence presented at this criminal trial, the court correctly determined that Heffron's communications with the protected person fell short of those that deserve constitutional protection and that a conviction based on his violation of the protection order did not place his First Amendment rights at risk.

The entry is:

Judgment affirmed.

James M. Mason, Esq. (orally), Handelman & Mason LLC, Brunswick, for appellant Richard A. Heffron III

Jonathan R. Liberman, District Attorney, and Alvah J. Chalifour, Jr., Asst. Dist. Atty. (orally), Sagadahoc County District Attorney's Office, Bath, for appellee State of Maine

Sagadahoc County Unified Criminal Docket docket number CR-2017-856
<small>FOR CLERK REFERENCE ONLY</small>