MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2016 ME 142
Docket:        Oxf-15-587
Submitted
  On Briefs:   May 26, 2016
Decided:       September 13, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

GINA M. CHILDS

v.

ROBERT A. BALLOU JR.

SAUFLEY, C.J.

[¶1]  Robert A. Ballou Jr. appeals from a judgment of the District Court (South Paris, *Carlson, J.*) granting to Gina M. Childs a two-year extension of an existing order of protection from abuse.  *See* 19-A M.R.S. § 4007(2) (2015).  Although Ballou raises multiple issues, we discern no error and write only to address his argument that the court-ordered restrictions on his communications with Childs violate his First Amendment rights.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Childs and Ballou were married in 2007, their son was born in 2008, and Childs filed for divorce in 2010.  Childs sought a protection from abuse order against Ballou in 2010 while the divorce was pending, and a

protection order was entered upon the parties' agreement without a finding of abuse. That order expired in 2012 after the divorce judgment had been entered.

[¶3] On August 20, 2013, Childs filed a new complaint for protection from abuse. The court entered an order, again by agreement of the parties and without a finding of abuse. The 2013 order prohibited contact except by email and only regarding their then five-year-old son, and allowed for emergency contact only through an identified third party. The order was set to expire on August 24, 2015.

[¶4] On August 11, 2015, Childs moved to extend the duration of the 2013 protection from abuse order. The court held a contested evidentiary hearing and granted the extension. The court entered an order prohibiting Ballou from "having any contact, direct or indirect," with Childs and ordered that rights of contact with respect to the child would be arranged and facilitated through a third party. Ballou moved for findings of fact and conclusions of law, *see* M.R. Civ. P. 52(a); and for the court to reconsider, alter, or amend the judgment, *see* M.R. Civ. P. 59(e). In a written judgment, the court

denied Ballou's post-judgment motions except to the extent that it made additional factual findings.[1]

[¶5] The following facts found by the court are based on competent evidence in the record. *See Smith v. Hawthorne*, 2002 ME 149, ¶ 15, 804 A.2d 1133. By 2013, Ballou was going to Childs's home almost every day, even at times when she had asked him not to do so. In July 2014, Childs reported to law enforcement email messages from Ballou that she thought violated the existing protection order. In some of those messages and in others that he sent in 2013, Ballou discussed matters that did not relate to the child,[2] including statements accusing Childs of seeing another man, mentioning his previous request for "break-up sex," and asking Childs to relax the protection from abuse order. Ballou also began repeatedly requesting that law enforcement officers conduct "well-being checks" regarding the child at Childs's home. In September 2014, Ballou was informed by the Sheriff's Office that it would no longer conduct such checks because Ballou was "looking for

---

[1] Ballou was separately charged with domestic violence stalking and violating a protective order. The charges were to be dismissed in twelve months if Ballou agreed to modify the protection from abuse order to authorize contact through a third party only. The modification never occurred for reasons that have not been explained.

[2] The email messages that were admitted at trial were lengthy and combative, even to the extent that they pertained to the child.

4

Law Enforcement to violate his protection order by reporting back on his child, ex-wife's home and her actions."

[¶6]  The court ultimately determined that the extension of the 2013 protection order was necessary because Childs's reasons for seeking an order in 2010 and 2013 still existed and caused her fear.  This finding was supported by evidence that, before the 2013 order was in place, Ballou would send Childs *hundreds* of text messages within a single day and that he had recently again been sending excessively long, combative, and frequent email messages that were not exclusively about the child.  The court found Ballou—who at trial dismissed Childs's safety concerns, claiming that she was "preoccupied [with] how the public perceives her"—not to be credible in his testimony or demeanor.  The court further found that Ballou's repeated requests for well-being checks on the child amounted to stalking.

[¶7]  Ballou timely appealed.  *See* 14 M.R.S. § 1901 (2015); 19-A M.R.S. § 104 (2015); M.R. App. P. 2.

## II.  DISCUSSION

[¶8]  Ballou argues that the extension of the protection from abuse order violates his First Amendment rights by prohibiting communications that are not threatening and are "at worst upsetting."  He further argues that he is

being penalized for exercising the right to petition for official action, which is protected by the First Amendment.

[¶9] Neither at the hearing nor in connection with his post-judgment motions did Ballou argue that the extension of the order would infringe on any of his First Amendment rights. Accordingly, we review the issue only for obvious error that "affects substantial rights or results in a substantial injustice." *See In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240 (quotation marks omitted). "For obvious error to require reversal, the error must be such as to deprive the party of a fair trial or to result in such a serious injustice that, in good conscience, the judgment cannot be allowed to stand." *Id.* ¶ 11.

[¶10] To address Ballou's claim of a serious injustice, we turn to the legislatively established process for the entry and extension of protection orders. "A protective order or approved consent agreement is for a fixed period not to exceed 2 years." 19-A M.R.S. § 4007(2). At the expiration of that two-year period, "the court may extend an order, upon motion of the plaintiff, for such additional time as it determines necessary to protect the plaintiff . . . from abuse." *Id.*; *see Gehrke v. Gehrke*, 2015 ME 58, ¶ 17, 115 A.3d 1252. In relevant part, "abuse" is defined to include, as between family or household members such as former spouses, "[a]ttempting to place or placing another in

6

fear of bodily injury through any course of conduct, including, but not limited to, threatening, harassing or tormenting behavior." 19-A M.R.S. § 4002(1)(B) (2015); *see* 19-A M.R.S. § 4002(4) (2015).

[¶11] Ballou's appeal challenges the court's application of this statute as a violation of the First Amendment. We review the jurisprudence regarding the First Amendment as it pertains to harassing or abusive speech, and then review the court's application of the protection from abuse statute.

A.     The First Amendment, Prior Restraint, and Conduct that Includes Harassing or Abusive Speech

[¶12] Both the United States Constitution and the Maine Constitution place great value on the freedom of speech. "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. "Every citizen may freely speak, write and publish sentiments on any subject, being responsible for the abuse of this liberty . . . ." Me. Const. art. I, § 4.

[¶13] We do not question the importance of this right. "Freedom of speech . . . , which [is] protected by the First Amendment from infringement by Congress, [is] among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action."

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 570-71 (1942) (quotation marks omitted).[3]

[¶14]  The constitutional right to freedom of speech, however, as with similarly protected rights, is not absolute.  "[N]ot all classes of speech are subject to first amendment protection," *State v. Cropley*, 544 A.2d 302, 304 (Me. 1988); *see also Schutz v. Schutz*, 522 So. 2d 874, 875 (Fla. Dist. Ct. App. 1988), and the right of free speech "is not absolute at all times and under all circumstances," *Chaplinsky*, 315 U.S. at 571.  "The First Amendment . . . is not an impenetrable shield which protects any speech or conduct, whatsoever, with disregard to its harm and effect."  *State v. Whitesell*, 13 P.3d 887, 900 (Kan. 2000).

[¶15]  The use of speech as part of conduct designed to threaten or harm other individuals will not find protection in either the Maine or the federal constitution.  "Despite our First Amendment rights, we are not free to harm others under the guise of free speech."  *Id.* at 900-01; *see generally Galloway v. State*, 781 A.2d 851, 857-80 (Md. 2001).

[¶16]  Accordingly, the relevant question is whether a court that enters an order restraining speech has restrained a person from engaging in conduct

---

[3]  Ballou relies entirely on the First Amendment in this argument, and we therefore do not address the Maine Constitution further.

that is harassing, threatening, or directly harmful to another person—conduct that is not protected by the First Amendment. "As speech strays further from the values of persuasion, dialogue and free exchange of ideas, and moves toward willful threats to perform illegal acts, the State has greater latitude to regulate expression." *Whitesell*, 13 P.3d at 901 (quotation marks omitted). Thus, although the First Amendment may protect the right to communicate with another person, it does not protect a person's choice to engage in harassing conduct with a purpose to intimidate a person who cannot avoid hearing statements that place them in fear. *See State v. Brown*, 85 P.3d 109, 112-13 (Ariz. Ct. App. 2004); *Emmerson v. Weilep*, 110 P.3d 214, 218 (Wash. Ct. App. 2005).

[¶17]  Thus, "a true threat is not constitutionally protected speech." *State v. Hotham*, 307 A.2d 185, 187 (Me. 1973) (citing *Watts v. United States*, 394 U.S. 705 (1969)) (involving a threat to police).[4]  Nor is conduct amounting to criminal harassment, *see* 17-A M.R.S. § 506-A(1) (2015),[5] protected by the

---

[4] *See also Galloway v. State*, 781 A.2d 851, 881 (Md. 2000); *Commonwealth v. Sholley*, 739 N.E.2d 236, 241 (Mass. 2000) ("The First Amendment does not protect conduct that threatens another." (quotation marks omitted)).

[5] Pursuant to 17-A M.R.S. § 506-A(1)(A)(1) (2015), "A person is guilty of harassment if, without reasonable cause: [t]he person engages in any course of conduct with the intent to harass, torment or threaten another person" after receiving a statutorily prescribed form of notice not to engage in that conduct.

First Amendment. *Cropley*, 544 A.2d at 304-05; *see also Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988) ("'Harassment is not communication, although it may take the form of speech.'" (quoting with approval *State v. Thorne*, 333 S.E.2d 817, 819 (W. Va. 1985))).[6] It is the fact-finder who properly determines whether a true threat or harassment has occurred. *See Hotham*, 307 A.2d at 187.

[¶18] We have not yet directly considered the application of the First Amendment in the context of a restraint on communication imposed by an order of protection from abuse. Ordinarily, "[t]emporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities"—constitute prior restraints on speech because they "*forbid[]* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quotation marks omitted). There is a "heavy presumption against [the] constitutional validity" of any prior restraint on speech. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) (quotation marks omitted).

[¶19] When, however, an individual speaks to another person, whether through telephonic or other electronic means, "not to communicate, but for

---

[6] Cases involving harassing conduct are distinguished from those involving communicative conduct that is undertaken to express a social or political viewpoint, such as burning a flag as a statement or holding a sit-in. *See State v. Brown*, 85 P.3d 109, 113-14 (Ariz. Ct. App. 2004).

other unjustifiable motives," that conduct is not speech protected by the First Amendment. *Altafulla v. Ervin*, 189 Cal. Rptr. 3d 316, 323-24 (Cal. Ct. App. 2015) (quotation marks omitted). Conduct involving "constant surveillance" and an "obtrusive and intruding presence" has been held "unwarranted and unreasonable," and therefore not protected by the First Amendment. *Galella v. Onassis*, 487 F.2d 986, 995 (2d Cir. 1973) (involving such conduct by a member of the media). The First Amendment does not provide "a wall of immunity" for tortious or criminal conduct, *id.*, and "does not compel one to submit to unwanted or detrimental association with another," *People in Interest of C.S.M.*, 570 P.2d 229, 231 (Colo. 1977).

[¶20] Generally, "[c]ourts have held that if past conduct has already been adjudicated illegal, tortious, or otherwise lacking in constitutional protection, then future conduct constitutionally may be enjoined." Laurie S. Kohn, *Why Doesn't She Leave? The Collision of First Amendment Rights and Effective Court Remedies for Victims of Domestic Violence*, 29 Hastings Const. L.Q. 1, 50-51 (2001) (footnotes omitted). Specifically, in cases involving restraining orders, courts have held that the First Amendment's protections do not apply to prevent a court from restraining "threatening or abusive communications to persons who have demonstrated a need for protection

from an immediate and present danger of domestic abuse." *Gilbert v. State*, 765 P.2d 1208, 1210 (Okla. Crim. App. 1988).

[¶21]  For example, the Court of Appeal of California rejected a First Amendment challenge to a protection from abuse order when a man had conveyed embarrassing information about his girlfriend to others, including her employer, and had severely traumatized one of her children with his angry words and conduct in the home.  *See Altafulla*, 189 Cal. Rptr. 3d at 319-20, 323-24.  The Oklahoma Court of Criminal Appeals similarly rejected a First Amendment challenge to the application of that state's Protection from Domestic Abuse Act when a defendant violated a no-contact order entered pursuant to the Act and the trial court revoked the defendant's suspended sentence.  *Gilbert*, 765 P.2d*.* at 1209-10.  The Vermont Supreme Court also affirmed a conviction for violating an abuse prevention order against the defendant's First Amendment challenge to the underlying order when he had threatened violence and had violated a previous protection order.  *State v. Mott*, 692 A.2d 360, 362, 365 (Vt. 1997).[7]

---

[7] *But see In re Marriage of Suggs*, 93 P.3d 161, 162 & n.1, 165-66 (Wash. 2004) (holding that an order violated the First Amendment as a prior restraint when it restrained a police officer's ex-wife from "knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming [him] and for no lawful purpose").

12

[¶22]  To disallow the imposition of an order restraining contact when abuse and harassment have already occurred, and a person has a demonstrable need for protection from further abusive and harassing conduct, "would establish a precedent that would leave persons powerless to protect themselves against unwanted, annoying, or harassing intrusions on their privacy." *People in Interest of C.S.M.*, 570 P.2d at 230-31 (holding that a no-contact order did not violate the right to freedom of association).  The First Amendment does not support such a precedent.  *See Mott*, 692 A.2d at 365 ("Defendant has no First Amendment right to inflict unwanted and harassing contact on another person.").  Accordingly, we must consider whether the restraint imposed here implicates the First Amendment or instead is a constitutionally permissible restriction on abusive conduct.

B.     Extension of the Protection from Abuse Order Protecting Childs

[¶23]  The record before the court demonstrated that Ballou's conduct went well beyond what he characterizes as the mere voicing of an opinion about his child's interests.  The court carefully considered Ballou's past behavior before placing a restraint on his future communications with Childs.  Ballou had a history of sending a tremendously excessive number of messages to Childs, and—as the court found—he had demonstrated an inability to

restrain himself while the 2013 order was in place. The court also specifically found that he had used law enforcement to intrude into Childs's home and stalk her, *see* 17-A M.R.S. § 210-A (2015),[8] and the evidence showed that he had sent messages in which he implored her to relax the restrictions on contact, referred to "break-up sex," and leveled accusations about her personal romantic life. Ballou's intrusions into Childs's life, including through lengthy, repeated, and intimidating messages, constitute conduct that is not protected by the First Amendment. *See Cropley*, 544 A.2d at 304-05; *Gilbert*, 765 P.2d at 1210.

[¶24] The First Amendment does not serve as a shield to protect Ballou from the consequences of his harassing communications. *See Whitesell*, 13 P.3d at 900-01; *cf. State v. Alphonse*, 197 P.3d 1211, 1217 (Wash. Ct. App. 2008) ("One may certainly voice a legitimate complaint without resorting to speech that rises to the level of tormenting or harassing the recipient."). Nor

---

8 In relevant part, the stalking statute provides, "A person is guilty of stalking if: [t]he actor intentionally or knowingly engages in a course of conduct directed at or concerning a specific person that would cause a reasonable person: [t]o suffer serious inconvenience or emotional distress." 17-A M.R.S. § 210-A(1)(A)(1) (2015). "'Course of conduct' means 2 or more acts, including but not limited to acts in which the actor, by any action, method, device or means, directly or indirectly follows, monitors, tracks, observes, surveils, threatens, harasses or communicates to or about a person or interferes with a person's property." 17-A M.R.S. § 210-A(2)(A) (2015). "'Emotional distress' means mental or emotional suffering of the person being stalked as evidenced by anxiety, fear, torment or apprehension that may or may not result in a physical manifestation of emotional distress or a mental health diagnosis." 17-A M.R.S. § 210-A(2)(D) (2015). A protection from abuse order may be entered upon a finding of stalking even if the definition of abuse contained in 19-A M.R.S. § 4002(1) (2015) has not been met. *See* 19-A M.R.S. §§ 4005(1), 4007(1) (2015).

can he use the First Amendment as a sword to disrupt Childs's life through behavior that the court concluded met the definitions of abuse and criminal stalking. *See* 17-A M.R.S. § 210-A; 19-A M.R.S. §§ 4005(1), 4007(1) (2015); *see also People v. Baer*, 973 P.2d 1225, 1232 (Colo. 1999).

[¶25]  In attempting to minimize his past abuse and harassment to avoid restrictions on future communications, Ballou argues that no single email could be understood to communicate an actual threat of physical harm. That argument is unavailing where the very length and volume of his communications displays his out-of-control behavior, focused directly on Childs. The court did not err in finding the communication pattern itself was evidence of a serious threat to Childs.

[¶26]  Given Ballou's history of sending excessive, combative messages and violating the boundaries established in protection orders—including by involving law enforcement—in a way that would cause a reasonable person to fear bodily injury and suffer emotional distress, the court did not commit error, much less obvious error, in prohibiting Ballou from having any direct or indirect contact with Childs and requiring that rights of contact with the child be arranged and facilitated by a third party. *See* 17-A M.R.S. § 210-A(1)(A)(1), (2)(A), (2)(D); 19-A M.R.S. §§ 4002(1)(B), 4005(1), 4007(1). The First

Amendment offers no protection for the type of conduct that led to the court's order, and the court did not violate the United States Constitution by ordering Ballou to cease having direct or indirect contact with Childs.

[¶27]  Similarly, a court does not violate the First Amendment right of petition[9] when it imposes legal consequences for communications to law enforcement that have been found to "demonstrate[] a criminal intent to harass, intimidate, torment, and embarrass."  *Alphonse*, 197 P.3d at 1216-17; *see also Thorne*, 846 F.2d at 244 ("The Petition Clause does not provide blanket immunity for unlawful conduct.").  Although Ballou was not criminally tried or convicted on the charge of stalking because of an agreement with the prosecutor that he inexplicably did not fulfill, the court found that his conduct in repeatedly using law enforcement to check on Childs and intrude into her home constituted stalking.  We discern no error in that determination, and the court did not violate the First Amendment.

The entry is:

Judgment affirmed.

---

[9]  "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.

**On the briefs:**

Christopher C. Taintor, Esq., Norman, Hanson & Detroy, LLC, Portland for appellant Robert A. Ballou Jr.

Gina M. Childs did not file a brief

South Paris District Court docket number PA-2013-95
FOR CLERK REFERENCE ONLY