MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 40
Docket:       Pen-16-514
Argued:       October 25, 2017
Decided:      March 20, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

JOHN A. WECKERLY

GORMAN, J.

[¶1]  John A. Weckerly appeals from a judgment of conviction for arson (Class A), 17-A M.R.S. § 802(1)(B)(2) (2017), entered by the trial court (Penobscot County, *Anderson, J.*) after a jury trial.  Weckerly argues that the court's admission of evidence of crimes of which he was acquitted in a prior trial violated the collateral estoppel component of double jeopardy.  Given the unique circumstances presented in this case, we agree and vacate the judgment.

I.  BACKGROUND

[¶2]  In November of 2011, a Penobscot County grand jury indicted Weckerly on one count of arson (Class A), 17-A M.R.S. § 802(1)(B)(2) (Count 1), for setting fire to a vehicle driven by an investigator with the State Fire Marshal's office on August 3, 2011, in Prentiss Plantation, a remote area of the

county. Five months later, in April of 2012, the same grand jury issued a second indictment against Weckerly containing eleven additional charges, all alleged to have been committed by Weckerly in Prentiss Plantation between May of 2010 and July of 2011: aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A) (2017) (Count 2); burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2017) (Count 6); theft by unauthorized taking (Class E), 17-A M.R.S. § 353(1)(A) (2017) (Count 7); five counts of criminal mischief (Class D), 17-A M.R.S. § 806(1)(A) (2017) (Counts 3-5, 8, 11); two additional counts of arson (Class A), 17-A M.R.S. § 802(1)(B)(2) (Counts 9-10); and another count of arson (Class A), 17-A M.R.S. § 802(1)(A) (2017) (Count 12). In particular, in Counts 9 and 10, the State alleged that Weckerly had committed arson on the property of Chris Jones on November 16, 2010, and July 3, 2011, respectively; in Count 11, the State alleged that Weckerly had committed criminal mischief by spray-painting graffiti on the property of Joseph Couture on July 11, 2011; and in Count 12, the State alleged that Weckerly had committed arson on the property of John Dreon on July 20, 2011. Weckerly pleaded not guilty to all counts.

[¶3] After a six-day trial in 2013, the jury found Weckerly not guilty of Counts 2-12, but could not reach a verdict on Count 1, the arson of the fire

marshal's vehicle. The court entered a judgment acquitting Weckerly of Counts 2-12 and, with Weckerly's agreement, declared a mistrial on Count 1.

[¶4] In preparation for the second trial, Weckerly moved in limine to exclude any evidence relating to Counts 2-12 on the ground that such evidence would violate double jeopardy principles because he had already been acquitted of those charges. After a hearing, the court denied the motion, concluding that double jeopardy did not preclude the admission of the evidence and that the evidence was admissible to show Weckerly's motive, intent, and state of mind.[1]

[¶5] In 2015, the court conducted a second jury trial on Count 1. During the second trial, the court admitted evidence relating to Counts 9-12 that was presented in the first trial. Three times during the trial, the court instructed the jury that Weckerly had already been charged with—and acquitted of—those four crimes. The court denied Weckerly's later motion for a judgment of acquittal.

---

[1] We dismissed as interlocutory Weckerly's appeal from the denial of this motion in limine; because Weckerly's appeal did not challenge the denial of a motion to dismiss on double jeopardy grounds, it did not qualify for the double jeopardy exception to the final judgment rule. *See State v. Nielsen*, 2000 ME 202, ¶ 1 n.1, 761 A.2d 876. In January of 2014, Weckerly moved to dismiss Count 1 of the indictment on double jeopardy grounds. We affirmed the court's denial of the motion to dismiss. *State v. Weckerly*, Mem-14-146 (Nov. 4, 2014). In that decision, we determined that Weckerly's challenge to the court's denial of his motion in limine to exclude from the second trial the evidence underlying Counts 2-12 was interlocutory, and we therefore declined to consider the argument. *Id.*

4

[¶6]   The jury found Weckerly guilty of the arson of the fire marshal's vehicle.  The court entered a judgment on the verdict, sentencing Weckerly to seven years in prison, all suspended, with four years of probation and $5,000 in restitution.[2]  Weckerly appeals.

## II.  DISCUSSION

[¶7]   Both the United States and Maine Constitutions offer protections against double jeopardy.   U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); Me. Const. art. I, § 8 ("No person, for the same offense, shall be twice put in jeopardy of life or limb."); *Ayotte v. State*, 2015 ME 158, ¶ 11, 129 A.3d 285. These provisions prevent a second prosecution for the same offense after an acquittal or conviction, or the imposition of multiple punishments for the same offense.  *Ayotte*, 2015 ME 158, ¶ 13, 129 A.3d 285.  As the United States Supreme Court has explained, the prohibition against double jeopardy serves

> two vitally important interests.  The first is the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.  The second is the preservation of the finality of judgments.

---

    [2]   Weckerly's application for leave to appeal his sentence was denied.  *State v. Weckerly*, No. SRP-16-518 (Me. Sent. Rev. Panel Jan. 26, 2017).

*Yeager v. United States*, 557 U.S. 110, 117-18 (2009) (citations omitted) (quotation marks omitted).

[¶8] Weckerly contends that the court violated his right to be protected against double jeopardy by admitting in his second trial evidence on which the State relied to try to prove some of the charges of which he was acquitted in his first trial—namely, evidence for Counts 9-12 regarding three arsons (two fires on Jones's property and one fire on Dreon's property) and one count of criminal mischief (spray-painted graffiti on Couture's property).[3] Weckerly's argument requires us to determine whether and to what extent evidence that was admitted in a prior prosecution to prove different criminal charges of which the defendant ultimately was acquitted may be admitted in a later prosecution.[4] We consider de novo whether the application of double jeopardy principles

---

[3] There is no dispute that double jeopardy considerations did not bar the prosecution of Weckerly for arson of the fire marshal's vehicle in the second trial given the hung jury on that count in the first trial. *See Yeager v. United States*, 557 U.S. 110, 118 (2009) (holding that a mistrial for a hung jury is a "manifest necessity" that has no preclusive effect on a subsequent prosecution for the same crime (quotation marks omitted)); *State v. Linscott*, 416 A.2d 255, 258-59 (Me. 1980) (same); *see also State v. Weckerly*, Mem-14-146 (Nov. 4, 2014) (affirming the court's denial of Weckerly's motion to dismiss, on double jeopardy grounds, the second prosecution of Count 1).

[4] We are not persuaded by Weckerly's additional argument—that the court erred by admitting dog tracking evidence and failing to instruct the jury regarding the reliability of such evidence. *See State v. Logan*, 2014 ME 92, ¶ 17, 97 A.3d 121 (holding that the weight and credibility of all admitted evidence are matters for the fact-finder's decision alone); *State v. Tibbetts*, 604 A.2d 20, 22 (Me. 1992) (stating that it is for the fact-finder to determine the weight to assign an expert opinion); *see also State v. Cole*, 1997 ME 112, ¶ 9, 695 A.2d 1180 (approving the use of dog tracking evidence).

6

precludes the admission of evidence. *Gray v. TD Bank, N.A.*, 2012 ME 83, ¶ 10, 45 A.3d 735; *State v. Mitchell*, 1998 ME 128, ¶ 4, 712 A.2d 1033.

[¶9]  Two United States Supreme Court cases are instructive.  First, in *Ashe v. Swenson*, six men were playing poker when they were robbed at gunpoint by three or four assailants.  397 U.S. 436, 437 (1970).  Each defendant was charged with a separate count of armed robbery as to each victim, and the charges were considered in separate trials.  *Id.* at 438-39.  After a jury trial, one of the defendants, Bob Ashe, was acquitted of the robbery as to one of the victims by a general verdict finding him "not guilty due to insufficient evidence." *Id.* at 439 (quotation marks omitted).  In Ashe's second trial, he was convicted of the robbery of a different victim at the same poker game.  *Id.* at 439-40.

[¶10]  Based on its determination that the "established rule [of collateral estoppel] is embodied in the Fifth Amendment guarantee against double jeopardy," *id*. at 445, the Supreme Court held that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit," *id.* at 443. The Court held that when the first acquittal is based on a general jury verdict, the court in the second trial must "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter"

to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration" in the second trial. *Id.* at 444 (quotation marks omitted).

[¶11]  After reviewing the record of Ashe's first trial, the Supreme Court determined, "[T]he record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that [the first victim] had not been a victim of that robbery." *Id.* at 445.  The Court concluded that the "single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers." *Id.*  Because the first jury necessarily found that Ashe was *not* one of the robbers, the Court concluded that the State was barred from introducing in the second trial any of the evidence used at the first trial to suggest that the defendant *was* one of the robbers. *Id.* at 445-46.  Although the second trial involved a different victim, all of the other circumstances of the two crimes were identical, and a conviction in the second trial would have required the jury to make findings directly contrary to those reached in the first trial. *Id.*

[¶12]  In the second instructive decision, *Dowling v. United States*, the Supreme Court distinguished *Ashe*.  493 U.S. 342, 348 (1990).  In *Dowling*, the defendant was charged with the armed robbery of a bank. *Id.* at 344.  His first

trial resulted in a hung jury, and his conviction in the second trial was reversed on appeal on different grounds. *Id.*; *see Gov't of Virgin Islands v. Dowling*, 814 F.2d 134, 140-41 (3d Cir. 1987). Between the second and third trials, the defendant was tried for and acquitted of burglary, attempted robbery, assault, and weapons charges in connection with a home invasion that had occurred two weeks after the bank robbery. *Dowling*, 493 U.S. at 344-45. In the defendant's third trial for bank robbery, the State introduced the testimony of the victim of the home invasion, who identified the defendant as one of the assailants. *Id.* at 344-45. The defendant appealed the bank robbery conviction, arguing that the admission of the evidence regarding the home invasion violated double jeopardy collateral estoppel as set forth in *Ashe. Id.* at 347.

[¶13] In its evaluation of the record of the home invasion trial, the Supreme Court determined that there were multiple possible explanations for the jury's general acquittal on the home invasion charges given that the defendant did not dispute that he had been in the victim's home on the day in question; the theory of the defense was instead that no robbery had occurred because the defendant had gone to the victim's house to retrieve money from an individual in the house. *Id.* at 351-52. The Supreme Court approved the court's admission at the third bank robbery trial of the evidence that the

defendant was present at the home invasion because the jury in the home invasion trial had not already "determine[d] an ultimate issue in the [third bank robbery] case," *id*. at 348, that is, the jury had not necessarily decided that the defendant was not involved in the incident that led to the home invasion charges: "Because a jury might reasonably conclude that [the defendant] was the masked man who entered [the home invasion victim's] home, even if it did not believe beyond a reasonable doubt that [the defendant] committed the crimes charged at the first trial, the collateral-estopped component of the Double Jeopardy Clause is inapposite,"[5] *id.* at 348-49.

[¶14]  Our approach in Maine is consistent with that employed by the Supreme Court.  In *State v. Dean*, 589 A.2d 929, 930 (Me. 1991), the defendant was indicted on one count of gross sexual assault, 17-A M.R.S.A. § 253(1)(B)

---

[5]  Having determined that collateral estoppel on double jeopardy grounds did not require the exclusion of the evidence of the home invasion, the Supreme Court declared such evidence admissible as long as it is "relevant and probative evidence that is otherwise admissible under the Rules of Evidence." *Dowling v. United States*, 493 U.S. 342, 348 (1990).  Thus, the double jeopardy collateral estoppel analysis requires a determination of the overlap between the two trials without regard for the purposes for which the evidence is offered in the second trial or the indicia of reliability of that evidence.  *See id.*  Evidence that does not violate double jeopardy collateral estoppel requirements, however, might nevertheless be inadmissible for other evidentiary reasons—as irrelevant, *see* M.R. Evid. 401, 402; as unfairly prejudicial, *see* M.R. Evid. 403; or as evidence of prior bad acts to establish the defendant acted in conformity therewith, *see* M.R. Evid. 404, for example.  In *Dowling*, the Court held that the evidence of the home invasion was admissible because the government sought the admission of that evidence in the bank robbery trial not to establish the defendant's prior bad acts exhibiting his poor character, but rather to establish a link between the defendant and a co-defendant, and to show that the defendant possessed a mask and gun as used in the home invasion that were identical to those used in the bank robbery.  493 U.S. at 345.

(Supp. 1990), and two counts of unlawful sexual contact, 17-A M.R.S.A. § 255(1)(C) (Supp. 1990).[6] He was acquitted in his first trial on the charge of gross sexual assault, but the jury was unable to reach a verdict on the charges of unlawful sexual contact, and the court declared a mistrial. *Dean*, 589 A.2d at 930. In the second trial, the court admitted evidence of the defendant's oral-genital contact with the victim of the alleged gross sexual assault notwithstanding the defendant's acquittal of that charge. *Id.* at 932. The defendant was convicted of the two unlawful sexual contact charges in the second trial. *Id.* at 930-31.

[¶15] In *Dean*, we first noted that the two trials involved no overlap of facts: "The charge of gross sexual [assault] involved an allegation of a sexual act completely separate and distinct from the acts constituting unlawful sexual contact at issue in the second trial." *Id.* at 933. We next determined, albeit with little discussion, that double jeopardy collateral estoppel did not bar in the second trial the admission of the *evidence* of oral-genital contact admitted in the first trial because the jury, by acquitting the defendant of gross sexual assault, did not necessarily decide the ultimate fact at issue—whether such

---

[6] Section 253(1)(B) has since been amended. *See* P.L. 2003, ch. 711, § B-2 (effective July 30, 2004) (codified at 17-A M.R.S. § 253 (2017)). Section 255 has been repealed and replaced by 17-A M.R.S. § 255-A (2017). *See* P.L. 2001, ch. 383, §§ 22-23 (effective Jan. 31, 2003). These amendments are not relevant to the matter now before us.

oral-genital contact had occurred: "The record in this case does not reflect that the acquittal on the charge of gross sexual [assault] was based on a finding that no such oral-genital contact occurred." *Id.* at 933 & n.5.

[¶16]  Because double jeopardy collateral estoppel did not bar the admission of the evidence, we next considered whether the evidence was otherwise inadmissible. *Id.* We determined that the evidence was not evidence of prior bad acts rendered inadmissible by M.R. Evid. 404 because it was instead admitted for the limited purpose of establishing the defendant's "motive, opportunity, state of mind and the relationship between the parties," and because the court gave an appropriate limiting instruction to the jury that "it could not consider the evidence as indicative of Dean's character, *see* M.R. Evid. 404(b), and that Dean could not be convicted of unlawful sexual contact based on that evidence of oral-genital contact." *Dean*, 589 A.2d at 932-33 & n.5.  We further concluded that the admission of the evidence was not unfairly prejudicial pursuant to M.R. Evid. 403. *Dean*, 589 A.2d at 933.

[¶17]  To evaluate a double jeopardy collateral estoppel argument, we conduct a case-by-case inquiry by examining the evidence presented and the theory of the defense in the first trial compared to the charges levied and the

evidence offered in the second trial. *See Dowling*, 493 U.S. at 347-48; *Ashe*, 397 U.S. at 444. In particular, the Supreme Court in *Ashe* required as follows:

> [T]his approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

397 U.S. at 444 (footnote omitted) (quotation marks omitted); *see United States v. Bravo-Fernandez*, 790 F.3d 41, 53-54 (1st Cir. 2015) (noting that the jury instructions and the parties' closing arguments are particularly useful in this inquiry). It is Weckerly's burden to demonstrate that, by "any reasonable assessment of the verdict," the ultimate issue for which the evidence was offered in his second trial was necessarily decided in his first trial.[7] *Bravo-Fernandez*, 790 F.3d at 54 (quotation marks omitted); *see Dowling*, 493 U.S. at 350.

---

[7] Neither the Supreme Court nor we have set forth the means by which that burden must be met or how it is reviewed on appeal, that is, whether Weckerly's burden was to establish that the ultimate issue was decided in the first trial *as a matter of fact before the trial court* (and whether we therefore review the court's factual determination for clear error on appeal), or whether Weckerly's burden is to establish before us that the ultimate issue was decided in the first trial *as a matter of law* (and whether we therefore review the record from the first trial on a de novo basis). We need not address this portion of the analysis in any detail in this matter, however, because by either approach, our conclusion is the same.

[¶18]   We now compare Weckerly's two trials according to this procedure.  As applied here, the ultimate issue that bears on the application of double jeopardy collateral estoppel is whether Weckerly committed arson on Jones's or Dreon's property or criminal mischief on Couture's property.  We must therefore ascertain whether the jury in the first trial necessarily acquitted Weckerly on the eleven counts on the ground that he was not the person who committed arson on Jones's or Dreon's property or criminal mischief on Couture's property, or whether the jury could have acquitted Weckerly based on some finding other than the identification of Weckerly as the actor—for example, (1) as to the arson charges, that no fires were set at all, that the fires were not set with the intent to damage or destroy the property, or that the fires did not recklessly endanger any person or property, and (2) as to the criminal mischief charge, that no spray-painting occurred, that Weckerly spray-painted Couture's property but lacked the requisite intent in doing so, that the property belonged to Weckerly rather than to Couture, that the graffiti did not damage or destroy the property, or that Weckerly had reasonable grounds to believe he had the right to spray-paint the property.  *See* 17-A M.R.S. §§ 802(1)(A), (B)(2), 806(1)(A).  If the jury in Weckerly's first trial rationally could have acquitted him *only* on the ground that he was not the perpetrator of those crimes, the

prohibition of double jeopardy demands that any evidence presented by the State to prove Weckerly was the perpetrator of those crimes in the first trial is inadmissible for any purpose in the second trial. If the jury in the first trial rationally could have acquitted Weckerly on some ground other than his identification as the perpetrator, the evidence relating to those crimes was admissible in the second trial as long as it was "relevant and probative" and "otherwise admissible under the Rules of Evidence." *Dowling*, 493 U.S. at 348.

[¶19] The trial court explicitly found that "there is little doubt that the basis for the jury's decision [in the first trial] was that the State had not proven, beyond a reasonable doubt, that [Weckerly] was the person who had committed the acts alleged."[8] Our review of Weckerly's first trial unequivocally leads us to the same conclusion. In particular, we note the following aspects of Weckerly's first trial:

- In seeking the exclusion of certain evidence, Weckerly's attorney argued that evidence regarding other crimes in the area was not relevant and was unfairly prejudicial because "there's nothing linking any of these other crimes in this area during this two-year period to Mr. Weckerly," but did not argue that those other crimes were not committed at all.

- In Weckerly's brief cross-examination of Couture after Couture's testimony about how someone had spray-painted graffiti on his

---

[8] As noted, the judge who presided over the second trial had also presided over the first trial. His determination that the acquittals were due to the jury's decision that the State had failed to prove that Weckerly had committed the crimes charged was never challenged by the State.

property, Weckerly did not ask a single question regarding the graffiti on Couture's property.

- After John Dreon's initial testimony regarding the burning of his camp, Weckerly asked Dreon no questions on cross-examination.

- After another witness testified regarding the fire at Dreon's camp, Weckerly again asked no questions on cross-examination.

- Weckerly himself took the stand and gave the following testimony on direct examination and on cross-examination:

  Q:     . . . . Now, John, did you spray-paint anybody else's property?

  A:     No.  As a matter of fact, I don't ever go off my property except when I go into town to go to the store.

  . . . .

  Q:     Now, John, you believe there's a certain group of people responsible for these problems that--that's going on in Prentiss Township, right?

  A:     Um--yeah.  I have always thought that it was the logging company, but I'm not--you know, I mean, that's just my personal opinion.

  . . . .

  Q:     [H]ow firm was your belief that the logging company or someone associated with the logging company was involved in what was going on in Prentiss Township?

  A:     Virtually a hundred percent. . . .

  . . . .

Q:   Who is that [referring to a photograph taken by a game camera set up in the area of the crimes]?

A:   Not me. Do you want me to tell you who I thought that it was? You know, there's several different people that I thought it might have been.

Q:   Now, Mr. Weckerly--

A:   It's not me, though.

. . . .

Q:   Did you spray-paint that sign there . . . ?

A:   No.

. . . .

Q:   Did you put that black lettering on Mr. Couture's shed?

A:   No.

[¶20]   The record of Weckerly's first trial therefore establishes no challenge to whether, when, or how the alleged crimes occurred; Weckerly defended the counts for arson and criminal mischief (Counts 9-12) based only on the ground that he was not the person who had perpetrated those crimes. Because the jury in Weckerly's first trial necessarily found that Weckerly *was not* the person who set fire to Jones's or Dreon's property, and *was not* the person who spray-painted Couture's property, evidence that Weckerly *was* the person who committed those acts was not admissible in his second trial for any

purpose.[9]  *See Dowling*, 493 U.S. at 348-49; *Ashe*, 397 U.S. at 444-46.  We therefore conclude that the admission of that evidence was barred by collateral estoppel and violated Weckerly's right to be protected from double jeopardy.

[¶21]  We also conclude that the error was not harmless, at least as to the three arson charges.  *Cf.* M.R.U. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights shall be disregarded.").  In particular, the circumstantial evidence of Weckerly's role in the prior arsons

---

[9]  Notwithstanding its determination that the failure of proof that Weckerly was the perpetrator of the prior arsons and criminal mischief was the only rational ground for the jury's acquittal, the trial court concluded that the evidence was admissible in Weckerly's second trial, reasoning, "Such a finding does not, however, preclude the State from offering evidence that [Weckerly] was the person who did those very same crimes under the lesser preponderance of the evidence standard."

There are two ways in which a preponderance standard could be triggered in these circumstances.  First, a failure to prove a particular fact beyond a reasonable doubt in a criminal case does not preclude the government from offering evidence of that same fact in a subsequent civil matter, such as a forfeiture proceeding, in which the preponderance of the evidence standard applies. *Dowling*, 493 U.S. at 349; *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235-36 (1972) (per curiam).  This type of analysis has no application here, where the beyond a reasonable doubt analysis applies to both trials at issue.

The second means by which a preponderance standard is triggered in a subsequent criminal trial is based on the rule of *Huddleston v. United States,* 485 U.S. 681, 690 (1988).  In that case, the Supreme Court held that when a trial court must decide whether to admit evidence of a conditional fact, *see* Fed. R. Evid. 104—such as evidence of the defendant's prior bad acts as an exception to Fed. R. Evid. 404(b)—the court need only conclude that "the jury could reasonably find the conditional fact, [i.e., that the defendant did the prior act,] by a preponderance of the evidence." *Huddleston*, 485 U.S. at 690*.*  Such an analysis, however, would apply to the court's determination of the admissibility of evidence only after it has been determined that the double jeopardy collateral estoppel hurdle does not bar its admission. *See Dowling*, 493 U.S. at 348.  *Huddleston* was not a double jeopardy case, and the preponderance standard enunciated in *Huddleston* has no application in evaluating, as a matter of law, the threshold issue of double jeopardy collateral estoppel.  Indeed, we relied on *Huddleston* in discussing the admissibility of the evidence at issue in *State v. Dean*, but not in relation to double jeopardy collateral estoppel; we instead cited to *Huddleston* in our discussion of the admissibility of the evidence for purposes of establishing the defendant's motive and opportunity after we had already concluded that no double jeopardy collateral estoppel violation had occurred.  589 A.2d 929, 933 n.5 (Me. 1991).

18

likely served as a major component of the jury's findings that Weckerly had both the means and motivation to also set fire to the fire marshal's vehicle. Given the similarity of the acts and the timing and location of the prior arsons, we cannot say that the evidence had no effect on the jury's verdict. *Cf. State v. Larsen*, 2013 ME 38, ¶¶ 23-24, 65 A.3d 1203 (defining an error as harmless if it "did not contribute to the verdict obtained" (quotation marks omitted)).

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

Hunter J. Tzovarras, Esq. (orally), Bangor, for appellant John A. Weckerly

R. Christopher Almy, District Attorney, and Mark A. Rucci, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2011-2754
FOR CLERK REFERENCE ONLY