STATE OF MAINE                                    UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss                                         No. CR-19-2865


STATE OF MAINE


v.                                                            ORDER


DAJUAN WILLIAMS,

                Defendant


Following up on its order of July 19, 2019, the court held a further hearing on July 23, 2019

to consider the motion by defendant Dajuan Williams to dismiss the complaint on the ground that

the alleged conduct on which the charges are based constituted constitutionally protected freedom

of expression.

At the hearing the State made a proffer on the record of the evidence by which it would

seek to prove its charges and withdrew its objection to the court's consideration of the pretrial

motion to dismiss.

Certain elements of the State's proffer are not disputed – that the course of conduct relied

upon by the State on the stalking charge and the reckless conduct relied upon by the State on the

reckless conduct charge consist of (1) the April 27, 2019 posting on Facebook of the May 23, 2018

video interview obtained in discovery in which a person named Jenn Velez made statements that

incriminated Williams in CR-18-2736 and (2) multiple recorded jail phone calls on April 27, 2019

demonstrating that Williams made considerable efforts to arrange for the video to be posted on

another inmate's Facebook account.

In those phone calls Williams expressly requested that the video be hashtagged with Ms. Velez's street name ("Suki") and also that it be hashtagged with the words to the effect of "be aware" and with a request that recipients share the video. However, the State did not propose to offer evidence that Williams requested the addition of the hashtags "#ihaterats" or "#snitch." The posting also has "rat," "pig," and "snake" emojis, but the State does not contend that it has evidence those were requested by Williams. According to defense counsel, the words "#ihaterats" and "#snitch" (and presumably the emojis) were added independently by the person with whom Williams arranged to post the video.

While it is possible to use a Facebook posting to communicate with another Facebook user by "tagging" that user, Velez was not tagged in the posting.[1] The State did not propose to offer any evidence that it was directly communicated to her.

Certain aspects of the State's proffer are disputed. The State contends that it can show that Williams had previously threatened Velez in May 2018 and that he had threatened and assaulted her in October 2018. Williams denies doing that and argues that the State may not offer that evidence because the conduct in question was previously the subject of charges in CR-18-5548 that were dismissed as part of the plea deal in which Williams entered a nolo plea to the trafficking charge in CR-18-2736.

For purposes of the motion the court will assume that although Williams cannot be prosecuted for the 2018 conduct, the State could offer evidence of that conduct to show that Williams harbored an intent to threaten, harm, or retaliate against Velez. Under M.R.Evid. 404(b) evidence of prior bad acts may be offered to prove intent and motive, subject to weighing the

---

[1] At the July 23 hearing there was discussion of the distinction between "hashtagging" (which identifies the subject matter of a post) and "tagging" (which is designed to communicate the post to a specific recipient).

2

probative value of that evidence against the danger of unfair prejudice under Rule 403. *E.g., State v. Pillsbury*, 2017 ME 92 ¶¶ 13, 22-24, 161 A.3d 690. This motion does not present an appropriate occasion to consider any Rule 403 issues. Moreover, although the charges had been dismissed as part of a plea agreement, it does not appear that Williams could successfully argue that evidence of the 2018 threats and assault would be barred by the collateral estoppel component of the double jeopardy clause. *See State v. Weckerly*, 2018 ME 40 ¶¶ 9-17, 181 A.3d 675; *State v. Dean*, 589 A.2d 929, 933 (Me. 1991).[2]

The State has also offered to prove that Williams was aware, based on a motion for a protective order that was granted in CR-18-2736 on December 3, 2018, that the release of any interview of Velez carried a risk that she would be subjected to threats, intimidation, and retaliation.[3] Williams disputes that he was made aware of that protective order.

Finally, State proposes to offer evidence that the May 23, 2018 Velez interview posted on Facebook on April 27, 2019 had previously been circulated (not on Facebook) in January or February 2019 and that this had resulted in threats and vituperation directed at Velez. The State did not , however, offer to prove that it had evidence of specific threats, vituperation, or retaliation against Velez resulting from the posting on April 27, 2019.

Although certain portions of the State's offer of proof are disputed, the outcome of the motion does not turn on the disputed facts. For purposes of this motion, the court will assume that

---

[2] *Weckerly* and *Dean* demonstrate that the double jeopardy clause precludes prior bad act evidence that was the subject of earlier charges only when there has been an acquittal that necessarily involves a finding on the ultimate issue of whether the conduct in question had been proven. If an acquittal on prior charges does not otherwise preclude prior bad act evidence, the dismissal of prior charges as part of a plea agreement would not preclude prior bad act evidence.

[3] At the July 23 hearing it was clarified that the December 3, 2018 protective order applied to a different interview of Velez. The May 23, 2018 interview video that was posted on Facebook on April 27, 2019 was not covered by a protective order.

3

the State would be able to present all of the evidence in its offer of proof. In the court's view, this would not be sufficient to remove Williams's conduct from the protection of the First Amendment.

First, in and of itself, the Facebook post does not constitute a "true threat" that would be outside the protection of the First Amendment under *Watts v. United States,* 394 U.S. 705, 707 (1969) (per curiam). Nevertheless, the State can under certain circumstances prohibit persons from engaging in communication that constitutes a form of harassment and intimidation.

In drawing the line between harassment that may be prohibited and protected speech, the courts have found that conduct is not protected when two factors are present. The first factor is whether an intent to intimidate or harass has been shown. Thus, in *Childs v. Ballou,* 2016 ME 142 ¶¶ 15, 19, 148 A.3d 291, the Law Court addressed "speech as part of conduct <u>designed</u> to threaten or harm" and speech intended "not to communicate but <u>for other unjustifiable motives</u>" (emphasis added). *Accord, Thorne v. Bailey,* 846 F.2d 241, 243 (4th Cir. 1988); *State v. Brown,* 85 P.3d 109, 113 (Ariz. App. 2004) (both relying on the statutory requirement of a specific intent to harass).

The second factor is whether there has been direct and intrusive communication with an unwilling recipient. *See Childs v. Ballou,* 2016 ME 142 ¶ 6 (hundreds of combative emails sent to victim and repeated request to law enforcement for wellness checks); *Thorne v. Bailey,* 846 F.2d at 243 (phone calls to university officials at work and at home, letting phones ring for 15-20 minutes, conversations including vituperative language); *State v. Brown,* 85 P.3d at 111 (repeated phone calls to victim by disappointed suitor after court had entered a no contact order). The second factor is what the courts have found constitutes not just communication, but "conduct." *See Childs v. Ballou,* 2016 ME 142 ¶¶ 15-17, 19; *Thorne v. Bailey,* 846 F.2d at 243.

In this case the State's offer of proof addresses the first factor – intent – but the second factor is absent. The State's offer of proof does not include any evidence of direct communication

4

with the victim or any other directly intrusive actions toward the victim by the defendant. Accordingly, the State's case depends on whether an otherwise protected communication – not made or addressed to the person who is the subject of the communication – can nevertheless be the basis for a criminal prosecution if the defendant had the intent and expectation that the subject of the communication would likely be subjected to vituperation and perhaps threats from others as an indirect result of the communication.

In the absence of any direct contact with the victim or any other direct intrusion on the victim, the court concludes that the actions for which Williams is being prosecuted in this case – the Facebook posting and jail calls on April 27, 2019 – constituted communication that did not cross the line into conduct falling outside of the protection of the First Amendment.

What distinguishes this case from *State v. Heffron,* 2018 ME 102, 190 A.3d 232, is that the court in *Heffron* found that the defendant in that case was using a roundabout method of contacting the victim (addressing her by name) even though there was a protective order forbidding such contact. 2018 ME 102 ¶¶ 3-4, 8. Moreover, his communications were not just derogatory but "harassing and threatening." 2018 ME 102 ¶ 11. Heffron's prohibited contact with an unwilling victim constituted criminal conduct, not simply communication.

The court understands the State's concern in this case and disapproves of labelling people as "snitches" as stated in its July 19 order. Nevertheless Williams cannot be prosecuted for constitutionally protected activity, and the court will therefore grant the defendant's motion to dismiss.

Although not the basis for the court's ruling, the stalking charge also appears questionable for another reason. While the State argues that the jail calls and the Facebook posting constitute the "2 or more acts" required for a course of conduct under the stalking statute, the court is inclined

5

to the view that the statute requires two or more acts that would independently or in combination cause a reasonable person to suffer serious inconvenience or emotional distress. *See* 17-A M.R.S. §§ 210-A(1)(A)(1), 210-A(2)(A). Here there is only one such alleged act – the Facebook posting.

In addition, if the reckless conduct charge were to proceed to trial, the State could convict the defendant without proving intentional or knowing conduct on his part. As noted above, however, all the cases that have upheld prohibitions on harassment against First Amendment challenges have relied on the presence of specific intent to threaten or harass.

Social media is utilized all too frequently to broadcast communications about persons that the person making the communications knows or should know will expose the person named in the communications to vituperation and threats. This may be a highly undesirable development from a societal standpoint, but such communications remain protected by the First Amendment.

Dated: July 25, 2019

Thomas D. Warren
Justice, Superior Court

6