MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2026 ME 39
Docket:         Cum-25-55
Submitted
  On Briefs:    October 29, 2025
Decided:        April 23, 2026

Panel:          MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

AMELIA JOHNSON

v.

MICHAEL OSSEYRAN

LIPEZ, J.

[¶1] Amelia Johnson appeals from a judgment of the District Court (Portland, *Powers, A.R.J.*) in favor of Michael Osseyran on Johnson's complaint for a protection-from-abuse order for herself and her minor child against Osseyran, the child's father. Although we modify the judgment to correct a clerical error regarding the parties' attendance at the final hearing, we otherwise affirm.

## I. BACKGROUND

[¶2] Johnson filed her complaint for protection from abuse on December 9, 2024. That same day, the court (*Darvin, J.*) granted Johnson and

the child a temporary order for protection from abuse and awarded Johnson temporary parental rights and responsibilities concerning the child.

[¶3]  The court (*Powers, A.R.J.*) held a final hearing on the matter on January 17, 2025.  Johnson appeared pro se and although Osseyran did not attend the hearing, his attorney appeared on his behalf.  The court heard testimony from Johnson, an investigations caseworker from the Department of Health and Human Services, and a friend of Osseyran's, and admitted in evidence screenshots of the parties' text messages.

[¶4]  Following the parties' presentations, the court made the following findings of fact, which are supported by competent evidence in the record. *See Doe v. Hewson*, 2022 ME 60, ¶ 11, 288 A.3d 382.  The parties' child presents substantial parenting difficulties, and the parties have different approaches to parenting.  It can be stressful to be with and to care for the child.  Osseyran is not stalking, threatening, or harassing Johnson or the child, but rather is trying to co-parent and communicate with Johnson.  Although Osseyran's actions may be offensive to the child, Osseyran has not attempted to cause the child bodily injury or to hurt the child.

[¶5]  Based on these findings, the court declined to enter a final order for protection from abuse on behalf of Johnson or the child and dismissed the

temporary order.[1] Johnson did not file a motion for further findings of fact but did timely appeal from the judgment. *See* M.R. App. P. 2B(c).

## II. DISCUSSION

[¶6] Johnson raises three arguments on appeal: (1) the evidence compelled the court to find in her favor; (2) the court misinterpreted the applicable statute; and (3) the court committed an evidentiary error that requires vacatur of the judgment. We address each of these contentions in turn.

## A. Sufficiency of the Evidence

[¶7] The party seeking a final protection order "must prove the allegation of abuse or conduct specified in [19-A M.R.S. § 4103 (2026)[2]] by a preponderance of the evidence." 19-A M.R.S. § 4109(1) (2026). "In making factual findings," a court considering a request for a protection order "is free to accept or reject the testimony of individual witnesses in whole or in part, and is free to reject testimony that is not contradicted if it finds that testimony incredible." *See Klein v. Klein*, 2019 ME 85, ¶ 6, 208 A.3d 802 (quotation marks omitted). Because Johnson had "the burden of proof at trial, we will reverse a

---

[1] Johnson contends that it is not clear whether the court dismissed her complaint or entered judgment in favor of Osseyran. Although the court declared orally that Johnson's "[c]omplaint is dismissed," we construe the court's actions as an adjudication of the merits of Johnson's complaint.

[2] Title 19-A M.R.S. § 4103 was amended during the pendency of this case, though not in any way that affects this appeal. *See* P.L. 2025, ch. 158 (effective Sep. 24, 2025).

4

ruling against [her] only if the evidence compelled the court to find in [her] favor." *Nou v. Huot*, 2025 ME 44, ¶ 22, 335 A.3d 603 (quotation marks omitted).

[¶8] Here, the evidence did not compel the court to find that Johnson was entitled to a final order for protection from abuse. Although Johnson contends that the evidence demonstrated that Osseyran engaged in a "deliberate pattern of harassment" against her, none of the evidence presented, including Johnson's testimony and the text messages between the parties, compelled the court to find that Osseyran engaged in stalking or threatening, harassing, or tormenting behavior that attempted to place or placed Johnson in fear of bodily injury. *See* 19-A M.R.S. §§ 4102(1)(B), 4103(1)(B)(1) (2026); 17-A M.R.S. § 210-A (2026).

[¶9] Nor did the evidence compel the court to find that Osseyran abused the parties' child. *See* 19-A M.R.S. §§ 4102(1)(A)-(B), 4103(2)(A). To be sure, Johnson testified that she had "noticed many incidents of [Osseyran] grabbing [the child], yanking [the child] by the arm, grabbing [the child] by the shoulders, [and] forcing [the child] to sit in a chair while yelling at [the child]." Although the court appears to have credited Johnson's testimony, it found that the conduct did not constitute abuse but rather was an attempt by the father to "parent . . . a very difficult child." This was a supportable conclusion in light of the evidence and the statutory scheme. The Legislature has excluded from the

definition of "abuse" in 19-A M.R.S. § 4102(1)(A) a parent's use of "a reasonable degree of force against [a] child when . . . [the parent] reasonably believes it necessary to prevent or punish the child's misconduct," 17-A M.R.S. § 106(1) (2026). Because Johnson did not file a motion for further findings under Maine Rule of Civil Procedure 52(b), we infer that the court was relying on this exception when it concluded that the father's actions, while perhaps offensive to the child, did not constitute abuse within the meaning of the statute. *See Doe v. Tierney*, 2018 ME 101, ¶ 15, 189 A.3d 756. Similarly, the evidence did not compel a finding that Osseyran attempted to place or did place the child in fear of bodily injury through his conduct, *see* 19-A M.R.S. § 4102(1)(B), as Johnson claims.

## B.    Application of Protection-from-abuse Statute

[¶10] Johnson next contends that the court erred in its application of the protection-from-abuse statute because it (1) failed to account for the fact that victims of stalking are eligible for a protection order, *see* 19-A M.R.S. § 4103(1)(B)(1); 17-A M.R.S. § 210-A, and (2) interpreted the "reasonable degree of force" exception too broadly, thereby undermining the Legislature's goal of assisting victims of abuse, *see* 19-A M.R.S. § 4102(1)(A); 17-A M.R.S. § 106(1). "We review de novo a challenge to the court's interpretation of the

6

protection from abuse statute." *L'Heureux v. Michaud*, 2007 ME 149, ¶ 5, 938 A.2d 801.

[¶11]  We discern no legal error in the court's analysis, for two reasons. First, the court found that Johnson did not meet her burden to demonstrate that Osseyran was stalking her, not that a successful showing of stalking is insufficient to grant a protection-from-abuse order.  Second, the court did not misinterpret the statutory definition of "abuse," which includes an explicit exception for a parent's use of a "reasonable degree of force."  *See* 19-A M.R.S. § 4102(1)(A); 17-A M.R.S. § 106(1).  Johnson asserts that instead of relying on that exception, the court should have deferred to the caseworker's testimony that the Department made findings of abuse.  The Department, however, was operating pursuant to a different statutory definition of "abuse," *see* 22 M.R.S. § 4002(1) (2025),[3] and apparently had before it information different from what was presented to the court.  Contrary to Johnson's argument, the court was correct to rely on the definition of "abuse" contained within the protection-from-abuse statute, and its determination that Johnson had not proved abuse was not inconsistent with the intended purposes of the statute. *See* 19-A M.R.S. § 4101 (2026).

---

[3]  Title 22 M.R.S. § 4002(1) has since been amended.  *See* P.L. 2025, ch. 240 (emergency, effective June 10, 2025) (codified at 22 M.R.S. § 4002(1) (2026)).

## C.     Admission of Medical Provider's Conclusions

[¶12]    Finally, Johnson argues that the court erroneously allowed Osseyran to introduce inadmissible evidence, specifically hearsay information from a medical report.

[¶13]   At the hearing, Johnson elicited testimony from the Department caseworker that the caseworker made "findings of moderate severity physical abuse due to injuries [the child] sustained, as well as moderate . . . severity emotional abuse [based on] the behavior [the child] exhibits."   On cross-examination, Osseyran asked the caseworker about a medical evaluation of the child that informed the caseworker's opinion.  Osseyran specifically inquired into a portion of the report marked "assessment" and asked the caseworker to confirm various conclusions of the medical provider who authored the report.  This culminated in the caseworker testifying that the medical provider, who did not testify at the hearing, had concluded that there was "no evidence of abuse, and also no evidence to say there was none." Osseyran emphasized this testimony in closing, arguing to the court that "the actual physical examination of this child shows no evidence of abuse."

[¶14]   Johnson did not object to Osseyran's cross-examination of the caseworker or his closing argument, so "we review the issue only for obvious

error that affects substantial rights or results in a substantial injustice," *Childs v. Ballou*, 2016 ME 142, ¶ 9, 148 A.3d 291 (quotation marks omitted). "Any party claiming error must demonstrate prejudice from the error." *In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240.

[¶15]  Although Johnson does not clearly explain why the evidence was inadmissible,[4] it is apparent that the conclusions of the medical provider were hearsay not subject to an exception, *see* M.R. Evid. 801(c)-(d), 802, 803.[5]  The court's admission of this evidence was therefore erroneous.  We nonetheless conclude that the admission does not rise to the level of obvious error because Johnson has not demonstrated prejudice arising from the court's consideration of the information.  *See In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240.

[¶16]  The evidence that Johnson presented regarding Osseyran's alleged abuse of the child focused on Osseyran's conduct in disciplining the child.  As noted, Johnson described incidents of "grabbing" and "yanking," but she did not

---

[4]  Johnson points out that the court did not admit a written statement from a medical provider that she offered in her case-in-chief, and she suggests that the same rule should have applied to Osseyran.

[5]  Osseyran contends that this information was admissible as a statement made for medical diagnosis or treatment. *See* M.R. Evid. 803(4).  This argument fails because the statements in question were conclusions of the medical provider, not statements made by the child to the medical provider. *See id.*; *see also* Field & Murray, *Maine Evidence* § 802.2 at 461-62 (6th ed. 2007).  Because Osseyran maintains (erroneously) that the information was substantively admissible, and indeed, appears to have relied on the truth of the information in making his closing argument, we do not consider whether Osseyran could have properly used the information to impeach the caseworker's credibility. *See* M.R. Evid. 607, 801(c)(2); *Daniels v. Tew Mac Aero Servs., Inc.*, 675 A.2d 984, 990-91 (Me. 1996).

testify that Osseyran had inflicted any injuries on the child.[6]  The erroneously admitted information—that the medical provider did not find physical evidence of abuse—was therefore not inconsistent with Johnson's testimony and did not serve to undercut it.  Put another way, the court could have credited Johnson's testimony, as it appears to have done, and still concluded that Johnson failed to meet her burden because the actions she described did not constitute abuse within the meaning of the statute.  We accordingly cannot say that the hearsay testimony ultimately affected the outcome or Johnson's substantial rights, *see Childs*, 2016 ME 142, ¶ 9, 148 A.3d 291, and we affirm the court's decision not to issue a protection-from-abuse order.

## D.    Clerical Error in the Judgment

[¶17]    Although we affirm the denial of Johnson's request for a protection-from-abuse order, Johnson correctly points out that the court's written order erroneously indicates that she did not attend the final hearing and that Osseyran did.  We therefore modify the judgment to correct this clerical error.  *See* M.R. Civ. P. 60(a).

---

[6]  However, Johnson was allowed to elicit testimony from the caseworker that the medical provider noted a mark on the child's cheek that could have been a bruise.

The entry is:

> The judgment of the District Court is modified to indicate that Johnson, the plaintiff, was present at the final hearing, and that Osseyran, the defendant, was not present, but that his attorney appeared on his behalf. As modified, judgment affirmed.

_____

Amelia Johnson, appellant pro se

Mehron D. Buerger, Esq., Rioux, Donahue, Chmelecki & Peltier, LLC., Portland, for appellee Michael Osseyran